UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| STEVE BINKLEY, : | |
|       Plaintiff, : | No. 5:14-cv-6973 |
| : | |
| v. : | |
| : | |
| NOAH W. KREIDER AND SONS, RONALD : | |
| KREIDER, TOM BEACHLER, and : | |
| BEN BEACHLER, : | |
|       Defendants. : | |

_____

**MEMORANDUM**
**Defendants' Motion for Summary Judgment, ECF No. 22 - Denied**

**Joseph F. Leeson, Jr.**                                                                          **March 4, 2016**
**United States District Judge**

### I.   INTRODUCTION

On December 9, 2014, Plaintiff filed this action against his former employers, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and the Pennsylvania Human Relations Act ("PHRA"), 17 Pa. C.S. §§ 951-963.  Presently pending is Defendants' Motion for Summary Judgment which, for the reasons set forth herein, is denied.

### II.   BACKGROUND

    **A.   Procedural History**

Plaintiff initiated this action on December 4, 2014, alleging that he was discriminated against by his employer on January 5, 2009, when he was the only employee permanently laid off and was replaced by a younger employee.  Compl., ECF No. 1.  Defendants filed an Answer to the Complaint on May 22, 2015.  Answer, ECF No. 7.

1

On December 24, 2015, Defendants filed a Motion for Summary Judgment. Defs.' Mot. Summ. J., ECF No. 22. Defendants argue that Plaintiff cannot show a prima facie case of age discrimination and cannot show pretext to rebut their proffered legitimate, nondiscriminatory reason to terminate Plaintiff. Id. Plaintiff filed a Response on January 19, 2016, ECF No. 26, Defendants' Reply was filed on January 26, 2016, ECF No. 29, and Plaintiff filed a Sur Reply on February 2, 2016, ECF No. 30.

### B. Factual Background

The following facts are either undisputed or viewed in the light most favorable to Plaintiff, the non-moving party.

Defendant Noah W. Kreider & Sons ("Kreider Farms") is a "Pennsylvania entity engaged in agricultural production and processing." Pl.'s Ex. C, ECF No. 26-8. In 2005, Kreider Farms had five egg production and processing plants located in South Central Pennsylvania, specifically in Manheim, Middletown, Donegal, Mount Pleasant, and Bridge Valley. T. Beachler Dep. 41:2-41:5, Pl.'s Ex. F, ECF No. 26-11; B. Beachler Dep. 54:12-55:8, Defs.' Ex. E, ECF No. 23 and Pl.'s Ex. G, ECF No. 26-12. Defendant Ronald Kreider is the owner and President of Kreider Farms. Compl. ¶ 9. Defendants Tom Beachler, who was born in 1958, and his son Benjamin Beachler, who was born in 1980, are management employees. B. Bleacher Dep. 8:16-18; T. Bleacher Dep. 29:14-15. Benjamin Beachler started working for the family company in high school. B. Beachler Dep. 38:16-19, 40:17-41:2, 42:1-7, 44:20-22, 53:14-15, 53:15-20, 53:20-55:8. In 2005, Tom Beachler was the Vice President of Operations and Benjamin Beachler was the "overall processing manager" at the Manheim location of Kreider Farms. Defs.' Stmt Facts ¶ 10, ECF No. 22-1, admitted in Pl.'s Ctr-Stmt Facts ¶ 10, ECF No. 26-5. Plaintiff, who was born in 1959, was employed as the Manheim Egg Processing Manager from

January 2005 to January 2009.  Defs.' Stmt Facts ¶ 2, admitted in Pl.'s Ctr-Stmt Facts ¶ 2. Plaintiff's personnel file listed his date of birth.  See, e.g. Binkley Personnel File 42, Defs.' Ex. C, ECF No. 23.[1]

In December 2008, Defendant Benjamin Beachler made the decision to hire Sean Bush to take over as the Manheim Egg Processing Manager.  B. Beachler Dep. 157:2-8.  Terri Turner, the Human Resources Manager, testified that she prepared the offer letter for Sean Bush after several conversations with Mr. Beachler.  Turner Dep. 121:2-122:2, Defs.' Ex. D, ECF No. 23. Sean Bush, who was born in January 1971, previously worked for Kreider Farms as a manager of one of the company's restaurants.  Defs.' Stmt Facts ¶¶ 33, 42; Pl.'s Ctr-Stmt Facts ¶¶ 30, 42. Specifically, he worked at Hollee's restaurant from October 2002 until August 30, 2008, when the restaurant closed.  Bush Personnel File 10, 61, Defs.' Ex. F, ECF No. 23.  Ms. Turner recommended Sean Bush for the Manheim position based on her knowledge of his background and having worked with him previously.  Turner Dep. 63:10-19 (stating about Sean Bush: "We knew his background.  He had worked for us for many years."); Turner Dep. 108:4-21 (testifying that she recommended Sean Bush because he "has been one of the best managers that I have ever worked with").  Benjamin Beachler did not know Mr. Bush at the time he was hired, but had met Mr. Bush's wife.  B. Beachler Dep. 50:25-51:9.  Benjamin Beachler testified that he "didn't know that Sean was younger than Steve.  Sean has gray hair.  Looks like he's 55."  B. Beachler Dep. 162:21-23.  However, Sean Bush's personnel file, dating back to 2002, listed his date of birth.[2]  See, e.g. Bush Personnel File 54-56.

---

[1]     Although Plaintiff's date of birth has been blacked out on the exhibit, it can be reasonably inferred that his "Birthdate" was filled in or there would be no basis to black out this line.
[2]     Although Sean Bush's date of birth has been blacked out on the exhibit, it can be reasonably inferred that his "Birthdate" was filled in.

Benjamin Beachler also made the decision to terminate Plaintiff's employment. T. Beachler Dep. 66:1-6. He testified that Plaintiff "just wasn't the right fit for us. That's why we laid him off, so he could collect unemployment. He didn't fit for our long-term structure." B. Beachler Dep. 195:4-7. When questioned about the possibility of transferring Plaintiff, Benjamin Beachler testified that he could not simply transfer Plaintiff "being all of the other site managers were rubbed the wrong way at some point in time by [Plaintiff.]" B. Beachler Dep. 186:20-23.

Prior to December 2008, Plaintiff was never informed that he was in jeopardy of losing his job. T. Beachler Dep. 75:20-22. He was never issued any warnings about his behavior or any notices of poor performance. T. Beachler Dep. 77:4-18, 85:3-7. However, notes were added to Plaintiff's personnel file regarding employee complaints made on or about December 8, 2008, regarding female restroom breaks, and the subsequent conversations Ms. Turner and Benjamin Bleacher had with Plaintiff regarding the issues. Binkley Personnel File 22-23. The file also includes notes about a customer complaint received on December 25, 2008, and a complaint by a female employee on December 29, 2008, regarding the temperature of the restroom. Id. at 20-21. On December 30, 2008, Ms. Turner prepared a note following her conversation with Benjamin Beachler about the issues to be discussed with Plaintiff on January 5, 2009, the date of his termination. Id. at 19. The purported problems were "not committed," "poor performance," "management style," "forecasting not done," and "setting negative tone." Id. In a letter addressed to Plaintiff dated January 5, 2009, he was permanently laid off. Pl.'s Ex. E, ECF No. 26-10. The letter, written by Terri Turner, states: "[y]our management style and people skills do not meet with the future goals and direction of Kreider Farms." Id.

4

In his last performance review, dated February 26, 2008, Plaintiff was given ratings of three or four out of five.[3]  Id.  Pl.'s Ex. M, ECF No. 26-18 (filed under seal).  In the areas of productivity, adaptability, and attendance, Plaintiff was given a rating of four, meaning "exceeds expectations."  Id.  In the remaining eight categories, including work quality, knowledge of job, dependability, initiative and resourcefulness, judgment, relationships with people, communication skills, and leadership ability, Plaintiff received a rating of three for "meets expectations."  Id.  In the reviewer's comments section is written: "There has been a lot of improvement made at Manheim this last year.  Let's continue to improve + push forward for the next year."  Id.  In his performance evaluation from April 2007, Plaintiff received ratings of three in the areas of adaptability, attendance, and communication skills, and ratings of two, marking "below expectations," in the remaining eight categories mentioned above.  Defs.' Ex. C, ECF No. 23 (filed under seal).

After the 2008 evaluation, the Manheim plant, and other locations, began undergoing changes including new equipment and machinery.  Defs.' Stmt Facts ¶ 15, admitted in Pl.'s Ctr-Stmt Facts ¶ 15.  Plaintiff was not trained to operate the newly installed machinery.  Defs.' Stmt Facts ¶ 25, admitted in Pl.'s Ctr-Stmt Facts ¶ 25.

In 2009, Terri Turner generated a report detailing the ages and positions held by each Kreider Farms employee ("Age Report").  Defs.' Stmt Facts ¶¶ 45-46, admitted in Pl.'s Ctr-Stmt Facts ¶¶ 45-46.[4]  According to the Age Report, at the time of Plaintiff's termination: (a) Kreider Farms' employed approximately 225 employees, forty-six (20%) were older than Plaintiff.  Id.  Six employees were over the age of seventy, with the oldest being seventy-nine; twelve

---

[3]     Although the key includes six ratings, the sixth signifies "unobservable or not applicable."  Pl.'s Ex. M.  The highest rating grade is therefore a five.
[4]     Plaintiff argues that the Age Report is irrelevant, but does not challenge the accuracy of its contents.  Pl.'s Ctr-Stmt Facts ¶¶ 45-46.

employees were between the ages of sixty and seventy; and thirty-one employees were between fifty and sixty years of age. Id. Ninety-five of Kreider Farms' employees were over the age of forty, which equates to 42% of its total work force. Id. Of Kreider Farms' twelve higher level managers, seven of them (58%) were older than Plaintiff. Id. Of the fifteen managers at the same level as Plaintiff, five of them (33%) were older than Plaintiff and ten of them (66%) were over the age of forty. Id.

### III.  STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 257 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56; Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial,

because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

## IV. ANALYSIS

"The ADEA[5] prohibits age discrimination in employment decisions against persons who are at least 40 years of age." Kelly v. Drexel Univ., 94 F.3d 102, 104 (3d Cir. 1996) (citing 29 U.S.C. § 623(a)(1)). Under the McDonnell Douglas[6] framework, the plaintiff must, first, make out a prima facie case of discrimination, after which "the burden of production shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the action." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 and n.2 (3d Cir. 1998). "At step three, the plaintiff can survive summary judgment only if he submits evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. (quoting Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997)).

### A. Prima Facie Case of Age Discrimination

"Under the ADEA, a plaintiff can establish a prima facie case by demonstrating that (1) he is over forty, (2) he is qualified for the position in question, (3) he suffered from an adverse

---

[5] "[I]nterpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA;" therefore, the court may conduct a single analysis. Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015).

[6] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

employment action, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination." Reifinger v. Parkland Sch. Dist., 601 Fed. Appx. 138, 142 (3d Cir. 2015). "There is no magical formula to measure a particular age gap and determine if it is sufficiently wide to give rise to an inference of discrimination." Barber v. CSX Distrib. Servs., 68 F.3d 694, 699 (3d Cir. 1995) (explaining that case law assists the inquiry).

Defendant argues that Plaintiff has failed to show a prima facie case because Sean Bush is not sufficiently younger to draw the inference of discrimination and, also, Benjamin Beachler testified that he thought Mr. Bush was older than Plaintiff when he was hired. In response, Plaintiff does not specifically address Defendants' claim that Mr. Beachler did not know the respective ages of both employees. Rather, Plaintiff asserts that Mr. Bush was highly unqualified for the position and that Defendants' alleged reasons for terminating Plaintiff are disingenuous and lack evidentiary support.

Plaintiff, who was forty-nine years old when he was terminated, clearly suffered an adverse action. Further, Defendants do not appear[7] to dispute that Plaintiff was qualified for the position, which he held for four years. Accordingly, the Court will focus on whether Plaintiff can demonstrate that his replacement was sufficiently younger to permit a reasonable inference of age discrimination and whether Defendants knew about their relative ages.

Plaintiff's replacement, Sean Bush, was twelve years his junior, which the courts have consistently considered sufficiently younger to permit an inference of age discrimination. See Barber, 68 F.3d at 699 (finding that an eight-year age difference could permit an inference of age discrimination); Henry v. Acme, No. 11-5505, 2014 U.S. Dist. LEXIS 29437, at *7-8 (E.D. Pa.

---

[7] To the extent Defendants might contend that Plaintiff was not qualified for the position based on his allegedly poor performance, there would be a genuine dispute of material fact in light of the last performance evaluation that rated Plaintiff as meeting or exceeding expectations, which would nevertheless preclude the entry of summary judgment.

Feb. 25, 2014) (concluding "that the ten-year age difference between plaintiff and his immediate, albeit temporary, replacement is sufficient to establish the fourth prong of plaintiff's prima facie case"); Sadowski v. Greater Nanticoke Area Sch. Dist., No. 3:10-CV-242, 2013 U.S. Dist. LEXIS 38772, at *16-17 (M.D. Pa. Mar. 20, 2013) (rejecting the defendant's argument that the plaintiff could not rely on the ten-year age gap alone to establish her prima facie case (discussing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311 (1996))).

Further, although Benjamin Beachler testified that he did now know Sean Bush was younger than Plaintiff, the dates of birth of both employees were in their personnel files. See Geraci v. Moody-Tottrup, Int'l, 82 F.3d 578, 581 (3d Cir. 1996) (explaining that the "traditional McDonnell Douglas-Burdine presumption quite properly makes no reference to the employer's knowledge of membership in a protected class because, in the vast majority of discrimination cases, the plaintiff's membership is . . . documented on the employee's personnel record (age discrimination)"); Fabrizio v. UPMC, No. 10-1175, 2012 U.S. Dist. LEXIS 127563, at *52-53 (W.D. Pa. Apr. 23, 2012) (determining that the case was "the typical case in which a supervisor would be expected to know a plaintiff's approximate age and the age of her replacement from their personnel files and from on-the-job contact"), adopted by 2012 U.S. Dist. LEXIS 127558 (W.D. Pa. Sept. 7, 2012).  Cf. Harris v. Dow Chem. Co., No. 12-3713, 2013 U.S. Dist. LEXIS 162227, at *6-10 (E.D. Pa. Nov. 13, 2013) (finding that the plaintiff failed to present a prima facie case because the employer testified that she did not know plaintiff's age and there was nothing in workforce recruiting planner's notes to indicate the plaintiff's age), aff'd 586 F. App'x 843, 846 (3d Cir. 2014) (agreeing that the plaintiff did not show a prima facie case because the plaintiff failed to offer any evidence to rebut the employer's testimony that she was entirely unaware of the plaintiff's age when she declined to offer her an interview).

Additionally, Ms. Turner, the Human Resources Manager, testified that she knew Sean Bush from his prior employment with the company and had several conversations with Benjamin Beachler before Sean Bush was offered the position as Manheim Egg Processing Manager and before Plaintiff's termination.

Consequently, Plaintiff has established a prima facie case of age discrimination.[8] The Court will therefore consider whether Defendants have offered a legitimate, nondiscriminatory reason for their decision.

### B.      Defendant's Legitimate, Nondiscriminatory Reasons

The defendant's burden at step two "is relatively light: it is satisfied if the defendant articulates any legitimate reason for the discharge; the defendant need not prove that the articulated reason actually motivated the discharge." Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1996) (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

Defendants contend that Plaintiff was having significant difficulties performing his duties and that there were certain deficiencies in his performance, including his "gruff" management style, problems with organization and clutter, and break policy violations. Defs.' Brief Supp. Mot. Summ. J. 3-5, ECF No. 22-2. Defendants also refer to events that came to light in December 2008 that allegedly highlighted his poor performance, including his failure to properly control the temperature of the female restroom, a customer complaint that Plaintiff was uncooperative, and Plaintiff's alleged refusal to stay late to learn how to operate the new machinery. Id.

---

[8]    At the very least, there is a genuine issue of material fact, which precludes summary judgment, as to whether Plaintiff can show a prima facie case in light of Benjamin Beachler's testimony that he did not know the respective ages of Sean Bush and Plaintiff, and the fact that both employees had worked for Kreider Farms for a number of years and their personnel files contained their dates of birth.

These are legitimate, nondiscriminatory reasons for terminating Plaintiff. See Wooler v. Citizens Bank, 274 Fed. Appx. 177, 180 (3d Cir. 2008) (determining that poor performance is a legitimate, nondiscriminatory reason to fire an employee); Natale v. E. Coast Salon Servs., No. 13-1254, 2014 U.S. Dist. LEXIS 138475, at *11 (D.N.J. Sept. 30, 2014) (concluding that rude or disrespectful behavior is a legitimate, non-discriminatory reason for terminating an employee); Khair v. Campbell Soup Co., 893 F. Supp. 316, 339 (D.N.J. 1995) (recognizing that a "management style" which conflicts with the supervisor's management style may be a legitimate, nondiscriminatory reason). Thus, Defendant has met step two of the McDonnell Douglas framework.

### C. Lack of Evidence of Pretext

If the defendant satisfies step two, "the presumption of discrimination drops from the case." Woodson, 109 F.3d at 920 n.2 (citing Fuentes, 32 F.3d at 763). Thus, the plaintiff must point to "'some' evidence from which a factfinder could reasonably conclude that the defendant's proffered reasons were fabricated (pretextual)" in order to avoid summary judgment. Fuentes, 32 F.3d at 764-65. "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Id. at 765. "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." Id. (internal citations omitted).

First, Plaintiff incorrectly asserts that the inference of age discrimination, alone, is sufficient to defeat summary judgment. Because Defendants have provided a legitimate, nondiscriminatory reason for its decision, the inference of age discrimination is no longer in the case. See Woodson, 109 F.3d at 920 n.2 (citing Fuentes, 32 F.3d at 763).

Further, Plaintiff's complaint that Sean Bush was not qualified for the position is not sufficient to support a finding of pretext. See Fuentes, 32 F.3d at 765; Santiago v. Brooks Range Contract Servs., No. 11-7269, 2014 U.S. Dist. LEXIS 139231, at *26 (E.D. Pa. Sept. 30, 2014) (explaining that "merely hiring someone with less experience does not show discriminatory animus, nor is it strong evidence of pretext" (citing Robinson v. Matthews Int'l Corp., 368 Fed. Appx. 301, 305 (3d Cir. 2010)).

The Court also rejects Plaintiff's argument that there is contradictory evidence in the record regarding his termination letter in that it states he was "laid off," but no other employee was laid off at this time. Defendants have explained that they laid him off so he could collect unemployment and do not allege that the decision was part of a company downsizing. Accordingly, there are no inconsistencies or contradictions in this evidence.

Next, Plaintiff argues that Defendants' purported reason for termination for poor performance is disingenuous in light of his 2008 performance review praising his work and improvement. Although the evaluation made positive comments about Plaintiff's work, his ratings were mostly a three out of five and it was noted that Plaintiff needed to continue to improve. See Torchia v. Cmty. Health Care, Inc., No. 12-5607, 2014 U.S. Dist. LEXIS 137692, at *14-15 n.5 (D.N.J. Sept. 30, 2014) (finding that the plaintiff could not rebut the defendants' legitimate reasons for her termination, including dissatisfaction with her management style, because although she previously had glowing performance evaluations, those valuations also

12

indicated areas where she needed improvement).  Nevertheless, considering Plaintiff's marked improvement since his 2007 evaluation, the Court cannot say that a reasonable factfinder could not rationally find the proffered reason for termination unworthy of credence.  At the least, there is a genuine issue of material fact on this issue that precludes the entry of summary judgment.

Similarly, while the absence of notification of any performance deficiencies before December 2008 does not constitute pretext, see Robinson, 368 Fed. Appx. at 305 (holding that the "lack of information about performance problems does not constitute evidence of pretext"), the numerous write-ups in Plaintiff's personnel file after Sean Bush was offered the position as Manheim Egg Processing Manager raises a genuine dispute as to whether they were entered only to create the appearance of a legitimate reason for termination.  Defendants claim that they did not make the decision to terminate Plaintiff until the end of December 2008; however, they had already offered Plaintiff's job to Sean Bush before the complaints were added to his personnel file.  Accordingly, Plaintiff has demonstrated inconsistencies and contradictions in the proffered legitimate reasons from which a reasonable factfinder could find them unworthy of credence.  Notably, should a jury reject Defendants' proffered reasons, it may "infer the ultimate fact of intentional discrimination . . . [and] no additional proof of discrimination is required."  St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2749 (1993) (internal citation omitted).

Finally, although Defendants rely on the Age Report to show the absence of pretext, it is insufficient to provide any value to the Court.  See Molthan v. Temple Univ.-of Commw. Sys. of Higher Ed., 778 F.2d 955, 963 (3d Cir. 1985) (finding statistical evidence meaningless when incomplete).  "Statistical evidence of an employer's pattern and practice with respect to minority employment may be relevant to a showing of pretext." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 542 (3d Cir. 1992).  However, the Age Report reflects only the ages of the

employees in 2009 and does not include any information from which the Court can determine the hiring and firing practices of Kreider Farms. See McDonnell Douglas Corp., 411 U.S. at 804-05 (holding that "[o]ther evidence that may be relevant to any showing of pretext includes . . . petitioner's general policy and practice with respect to minority employment").

Having determined that there is some evidence from which a factfinder could reasonably disbelieve Defendants' proffered reasons, the Motion for Summary Judgment is denied. See Jones v. School Dist., 198 F.3d 403, 413 (3d Cir. 1999) (A "plaintiff may defeat a motion for summary judgment (or judgment as a matter of law) by pointing 'to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" (quoting Fuentes, 32 F.3d at 764). Moreover, there are legitimate issues of material fact regarding several issues that preclude the entry of summary judgment.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied. A separate Order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge